IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES CLEVENGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 0822 |
| | ) | |
| | ) | |
| BOLINGBROOK CHEVROLET, INC. | ) | Magistrate Judge Jeffrey Cole |
| GMAC FINANCIAL SERVICES AND | ) | |
| FORD MOTOR CREDIT COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Clevenger, alleges that the defendants, Bolingbrook Chevrolet ("Bolingbrook"), GMAC Financial Services, and Ford Motor Credit Company ("FMCC"), violated the Vehicle Information and Cost Saving Act ("Odometer Act"), 49 U.S.C. § 32701 *et seq.*, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq.*, and committed common law fraud, in connection with his purchase of an automobile. FMCC seeks to introduce a written "settlement offer" that proposed, among other things, the repurchase of the vehicle. Mr. Clevenger has moved in limine to bar the evidence.

### I

### BACKGROUND

On February 21, 2003, Mr. Clevenger purchased a used 1996 Ford Mustang from Bolingbrook with an odometer reading of 23,842 miles. Convinced that the car had more than the registered miles on it, Mr. Clevenger's attorney sent Bolingbrook a letter on May 21, 2003, charging them with violating the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10, and demanding $35,000 in

damages and revocation of the purchase contracts. (*Ford Motor Credit Company's Memorandum of Law*, Ex. F). Three months passed while the defendants pondered the matter. Bolingbrook's insurance company responded with a letter on August 11, 2003, offering to: (1) buy back the vehicle; (2) arrange for the cancellation of the retail installment contract; (3) refund all payments made; and (4) pay all reasonable and documented attorney's fees. It called the letter an "effort to fully resolve this matter fairly and in an amicable fashion." There was no offer to pay damages. (*Ford Motor Credit Company's Memorandum of Law*, Ex. G). The letter was actually orchestrated by FMCC.

The vehicle Mr. Clevenger had purchased was the subject of a previous lawsuit involving charges of odometer fraud against FMCC in DuPage County Circuit Court. FMCC regained possession of the vehicle and sold it at an auction to Bolingbrook in January 2003, without disclosing any odometer reading discrepancy. According to FMCC, it became aware of its failure in May of 2003, and learned the vehicle had since been sold to Mr. Clevenger. FMCC indicates that it contacted the insurance company and indicated it was willing to take the steps set forth in the August 11 letter. The insurance company then conveyed the offer to Mr. Clevenger's attorney. It was rejected. FMCC has filed a petition in which it seeks to introduce its offer as evidence on "the issues of plaintiff's damages and [FMCC's] acting in good faith without an intent to defraud." (*FMCC's Petition to Present Evidence*, ¶ 6).

## II

## ANALYSIS

Rule 408, Federal Rules of Evidence, is the starting point of analysis. It provides:

Evidence of (1) furnishing or offering to furnish or promise to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible

to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

There is no dispute that the August 11 letter "furnish[ed] or offer[ed] or promis[ed] to furnish . . . a valuable consideration in compromising or attempting to compromise a claim." Consequently, the admissibility of evidence of the offer under Rule 408 depends on whether it goes to "prove liability of or invalidity of the claim or its amount," or whether it is offered for "another purpose."

A.

### Evidence of FMCC's Settlement Offer is Clearly Inadmissible
### Under Federal Rule of Evidence 408

Congress has stated that the Odometer Act has two purposes: "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701. The Odometer Act provides, in relevant part:

> (a) Written disclosure requirements.—(1) Under regulations prescribed by the Secretary of Transportation, a person transferring ownership of a motor vehicle shall give the transferee a written disclosure—
>
> (A) of the cumulative mileage registered by the odometer; or
>
> (B) that the mileage is unknown if the transferor knows that the mileage registered by the odometer is incorrect.
>
> (2) A person making a written disclosure required by a regulation prescribed under paragraph (1) of this subsection may not make a false statement in the disclosure.

49 U.S.C. § 32705. The disclosure requirements are designed to assist car buyers "in determining a

3

vehicle's condition and value by making the disclosure of a vehicle's mileage a condition of title." 49 C.F.R. § 580.2. The mileage disclosed must be the actual mileage that the vehicle has traveled, *see, e.g.*, 49 C.F.R. § 580.3, when the title is transferred. 49 C.F.R. § 580.5(c)(1).

A violation of the Odometer Act with "intent to defraud" subjects the transgressor to private actions for three times the plaintiff's actual damages or $1500, whichever is greater. 49 U.S.C. § 32710. Accordingly, Mr. Clevenger must prove both a violation of the Odometer Act's disclosure requirements *and* an intent to defraud. *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 713 (7th Cir. 2005); *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 485 (7th Cir. 1997). FMCC concedes that the August 11 letter goes to the issue of its intent to defraud. But that concession sounds the death knell for FMCC's petition, for the letter is then being offered to prove the invalidity of Mr. Clevenger's claim. The plain and unambiguous text of Rule 408 prohibits evidence of settlement discussions used to prove the "invalidity of the claim" just as surely as it prohibits the evidence if offered to prove the invalidity "of the amount claimed."

It is no answer to say that Rule 408 permits the introduction of evidence of an offer of compromise where, as here, it is not being offered to prove liability on the part of Mr. Clevenger but rather to show that FMCC acted in good faith. (*FMCC's Petition to Present Evidence*, ¶ 6). FMCC's argument simply ignores the plain language of the Rule prohibiting any evidence of settlement negotiations offered to "prove . . . invalidity of the claim . . . ." See *Zurich American Insurance. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 689 (7th Cir. 2005)("By its terms, the rule forbids admission of evidence only when it is offered to prove 'liability for *or invalidity of the claim* or its amount.'")(emphasis supplied); *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2nd Cir. 1992)(relying on "plain language" of Rule 408 to find settlement offer inadmissible). By seeking to employ the August 11 letter to show that it acted without

4

intent to defraud at the time it resold the automobile, it is employing a settlement offer to prove the invalidity of Mr. Clevenger's claim. But that is manifestly a prohibited purpose under Rule 408.[1]

It is unclear from FMCC's petition whether it draws a distinction between offering the August 11 letter as evidence that it acted without intent to defraud and offering it to show it acted in good faith after learning of the problem. (*FMCC's Petition to Present Evidence*, ¶ 11). "[G]ood faith," is defined as "A state of mind consisting in...absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary, p. 713, 8th ed., Bryan A. Garner, ed. (2004). *See also United States v. Mutuc*, 349 F.3d 930, 934 (7th Cir. 2003)("It is self-evident that one with an intent to defraud does not act in good faith."). By definition, then, evidence of settlement negotiations to show good faith is not offered for "another purpose," within the meaning of Rule 408, because it contradicts the "intent" liability element of Mr. Clevenger's Odometer Act claim. Accordingly, to the extent FMCC attempts to draw such a distinction, its effort fails.

FMCC also submits that the settlement offer is admissible on the issue of Mr. Clevenger's damages or lack thereof. (*FMCC's Petition to Present Evidence*, ¶ 6). This position, too, ignores the plain

---

[1] FMCC's reliance on *Breuer Elec. Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) to support this argument is a nonstarter. There, the court said that "Rule 408 controls when evidence of settlement attempts is offered 'to prove liability.'" Of course, this statement was responsive to the issue in the case. The court simply had no occasion to refer to the rule's equally important prohibition about admitting such evidence to prove the invalidity of a plaintiff's claim. It is a misreading of the opinion to conclude that Rule 408 is not operative in the latter context. That interpretation ignores the plain language of Rule 408, and, in effect, impermissibly imports into the reading of opinions the principle of statutory construction that where a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979). *Cf. United States v. Dorfman*, 690 F.2d 1230, 1232 (7th Cir. 1982)(Posner, J.) (listing of specific circumstances where act is allowed "implies what is not permitted is forbidden . . . ."). In short, *Breuer Electric Mfg. Co.*, does not support in the slightest FMCC's arguments.

language of Rule 408, which prohibits admission of settlement negotiations "to prove liability for or invalidity of the claim *or its amount*." (Emphasis added). "Evidence that demonstrates a failure to mitigate damages goes to the "amount" of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408." *Pierce*, 955 F.2d at 826-27 (2nd Cir. 1992). Moreover, "settlement offers do not trigger the duty to mitigate. There is no duty to surrender the claim in order to mitigate damages." *Anheuser-Busch Inc. v. Algonquin Road Limited Partnership*, No. 89 C 1468, 1992 WL 373159, at *2 (N.D.Ill. Dec. 10, 1992)(Zagel, J.). *See also Beraha v. Baxter Healthcare Corp.*, No. 88 C 9898, 1994 WL 494654, *1 (N.D.Ill. Sept. 6, 1994)(Castillo, J.)(settlement offer inadmissible to show plaintiff could have mitigated his damages by accepting it).

## B.

## Diersen v. Chicago Car Exchange Does Not Control This Case

In an effort avoid the plain language of Rule 408, FMCC relies on a single sentence excised from the Seventh Circuit's decision in *Diersen v. Chicago Car Exchange* for the proposition that fraudulent intent is belied by an offer to allow plaintiff to return the vehicle for a full refund. In *Diersen*, the plaintiff purchased a 1968 Dodge Charger with an odometer reading of 22,633 miles, but discovered that title documents described the vehicle's mileage as 75,000. Plaintiff contacted the automobile's two previous owners, who informed him that the title history was the result of a clerical error and that the car was indeed a low-mileage vehicle. *Id.* at 483. Nevertheless, plaintiff retained counsel and brought the issue to the attention of the seller, which offered to repurchase the car and return the purchase price. The plaintiff rejected the offer, preferring instead to sue. *Id.* at 484, 488.

The Seventh Circuit affirmed the grant of summary judgment in favor of the dealership, because

6

a rational trier of fact could not find that the dealership acted with an intent to defraud.[2] The court noted that three of the car's previous owners were deposed and testified that the car was a low-mileage vehicle. *Id.* at 487. It further noted that the dealership relied on a sworn odometer statement when it purchased the vehicle, and that its own inspection of the vehicle did not suggest the odometer reading was inaccurate. Reviewing in detail the entire record, the court found that there was no evidence to suggest that the dealership knew or even suspected that the odometer reading was mistaken, much less that it intended to defraud the plaintiff by providing an inaccurate odometer reading. *Id.* at 488. Only after this exhaustive review did the court say: "Indeed the plaintiff's allegation of fraudulent or evil intent is belied by the fact that the CCE, in good faith, offered to allow Diersen to return the car for a full refund of his money...." *Id.*

"Judges expect their pronouncements to be read in context...." *Wiseheart v. Davis*, 408 F.3d 321, 327 (7th Cir. 2005)(Posner, J.). *Cf. Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.) When the sentence on which FMCC relies is read in context, it is obvious that *Diersen* neither held nor pretended to suggest an evidentiary rule of general applicability, namely that in an odometer fraud case, fraudulent intent can be "belied" by the *post-hoc* offer of a defendant to repurchase the automobile.[3] If FMCC's reading of the case were correct, there could never be summary judgment in an Odometer Act case in favor of a plaintiff, for the settlement offer by the defendant would create a disputed issue of material

---

[2] The dealership sought summary judgment on two alternate grounds: (1) that there was an "older vehicle" exemption to the Odometer Act, and (2) that there was no genuine issue as to its intent to defraud. The district court granted summary judgment on the first ground, and so did not address the second. On appeal the Seventh Circuit rejected the ruling on that first ground, but affirmed the district court's entry of judgment on the second ground. 110 F.3d at 487 n.5.

[3] Indeed, it is not even clear from the phrasing of the sentence whether the offer itself was deemed to be an indicia of good faith, or whether the summary judgment record showed that the offer was in fact made in good faith and therefore belied the allegation of fraudulent intent.

7

fact on the question of the defendant's intent at the time the car was sold. In any event, neither the applicability of Rule 408 nor Rule 401 was not presented in *Diersen*, and thus, it does not control this case, *cf. Pierce v. Tripler*, 955 F.2d at 829, for prior cases have precedential value only when there has been a deliberative consideration of the issue at hand; *sub-silentio* or assumptive resolution is not enough. *See, e.g., City of Kenosha v. Bruno*, 412 U.S. 507, 512-13 (1973); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 542 (N.D.Ill. 2005)(collecting cases).

It is precisely this rationale which underlies courts' refusal to be bound by dictum. The term has been variously defined. The Seventh Circuit has defined it as "'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988)(Posner, J.). It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication. All of these definitions tend to be somewhat vague and circular. Judge Posner has suggested as an alternative to ask what is at stake in the definition:

> What is at stake in distinguishing holding from dictum is that a dictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject. So instead of asking what the word "dictum" means we can ask what reasons there are against a court's giving weight to a passage found in a previous opinion. There are many. One is that the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome. A closely related reason is that the passage was not an integral part of the earlier opinion – it can be sloughed off without damaging the analytical structure of the opinion, and so it was a redundant part of that opinion and, again, may not have been fully considered.

*Id.* at 292.

All these are reasons for concluding that the isolated sentence in *Diersen* on which FMCC relies "was not a fully measured judicial pronouncement," *id.* at 293, at least as it pertains to the admissibility under Rule 408.

## C.
## FMCC's Additional Arguments in Favor of Admissibility Fail

FMCC's final argument purports to be policy-driven. Since the purpose of Rule 408 is to promote and encourage offers of settlement, FMCC argues that Rule 408 should be viewed as a privilege that can be waived. There are several reasons why the argument must be rejected. First, coming as it did in the reply brief, it is waived. *Heart v. Transit Management of Racine, Inc.* 426 F.3d 863, 867 (7th Cir. 2005); *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004). Application of the waiver doctrine in this context ensures that a party's right to be heard is not abridged, and that the court does not have a one-sided presentation, with its inevitably adverse effects on the accuracy of the judicial process. *In re Sulfuric Acid Antitrust Litigation*, No. 03 C 4576, 2005 WL 2059327, *8 (N.D.Ill. Aug. 26, 2005)(collecting cases).[4]

Second, the federal courts are almost uniform in their adherence to the plain language of Rule 408,

---

[4] FMCC also raises another new argument in its reply brief although very cursorily, namely, that the August 11 letter was not a settlement offer under Rule 408 because it was unconditional. (*FMCCs Memorandum of Law*, at 5). This arguments is likewise waived. Beyond this, the argument is only skeletal in form and unsupported and thus is waived. See, *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000); *United States v. Cusimano*, 148 F.3d 824, 828 n. 2 (7th Cir. 1998). While there is authority to the effect that unconditional offers are not covered by Rule 408 in certain contexts, *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2nd Cir. 1997) (employment discrimination), FMCC does not attempt to demonstrate that this principle is applicable here. Indeed, FMCC has not even made the showing required to demonstrate convincingly that the offer in question *was* unconditional. *See Pierce*, 955 F.2d at 827; *Arnold v. County of Cook*, 220 F.Supp.2d 893, 898-99 (N.D.Ill. 2002).

which precludes acceptance of FMCC's argument.[5] For example, in *Pierce*, the defendant sought to introduce evidence of post-claim conduct to prove its state of mind at the time it refused to hire Pierce as general manager. It argued that the evidence under this theory was not for the purpose of proving liability for or invalidity of the claim or its amount. The court of appeals rejected the argument, preferring to apply Rule 408 as written, and held that the evidence, regardless of the status of the offering party, went to the liability for or invalidity of the claim and thus did not fall within the another purpose exception to excludability under Rule 408. 955 F.2d at 828. *See also Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986)("Even where the evidence offered favors the settling party and is objected to by a party not involved in the settlement, Rule 408 bars the admission of such evidence . . ."); *Crigger v. Fahnestock and Co., Inc.*, No. 01CIV781JFK, 2005 WL 857368, *1 (S.D.N.Y. April 14, 2005). As *Pierce* explained, the policy underlying Rule 408 would be frustrated, not furthered by allowing Rule 408 to be construed as in effect creating a waivable privilege.

### D.
**Under The Circumstances Of This Case, the Settlement Offer is Irrelevant to FMCC's Intent**

The overarching rule of evidence in all cases is Rule 401, which defines relevant evidence as evidence having "any tendency" to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Under Rule 401, the test for admissibility is quite lenient. Thus, the question is whether FMCC's written offer to settle – on its terms and coming three months after Mr. Clevenger's letter and seven months after it sold

---

[5] *Compare Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989)(The Federal Rules of Civil Procedure are to be accorded "their plain meaning. . . and generally with them, as with the statute, '[w]hen we find the terms. . . unambiguous, judicial inquiry is complete. . . .'").

the car – has any tendency to show that in January of 2003 the defendants lacked the intent to defraud.

It is not a necessarily fatal objection that the evidence occurs subsequent to the crime or claim, for Rule 404(b) allows evidence of other acts of a party in civil or criminal cases to be admitted where they are relevant to showing, *inter alia*, intent. *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 519-20 (3rd Cir. 2003). However, the evidence must be relevant. Thus, in *Castro v. Chicago Housing Authority*, 360 F.3d 721, 732-33 (7th Cir. 2004), the Seventh Circuit affirmed the district court's refusal to reduce damages under 29 U.S.C. §2104, notwithstanding the defendant's claim that its settlement of a number of cases (along with other evidence) demonstrated its good faith. As the court of appeals stressed, "[a]ll of these payments, however, were provided to the employees after the WARN [Worker Adjustment and Retraining Notification] Act violation. As one court emphasized, 'the defendant's conduct *after* the violation is not relevant to the determination of good faith contemplated by the statute. The pertinent inquiry in deciding whether to exercise the court's discretion in favor of reducing the defendant's liability is the defendant's conduct *prior* to the notice[.]'" *Id.* at 733 (Emphasis and bracket in original). *Compare Wyatt v. Security in Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987)(sustaining district court's refusal to allow evidence of settlement agreements offered by defendant in other cases).

In the instant case, the offer to settle is not relevant. The jury will be asked to guess as to whether the offer of settlement was merely to buy peace – which by definition is irrelevant[6] – or somehow indicated good faith seven months earlier, or indicated nothing at all beyond having gotten caught for a second time and realizing that the game was up. Neither hypothesis nor speculation is proof. *Lauth v. McCollum*, 424

---

[6] 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.03(4) (Joseph M. McLaughlin ed., 2d ed.2002) (offers to compromise in civil cases are rejected by courts on two grounds, one of which is "irrelevancy... [as] motivated by a desire to 'buy peace[,]' ....").

11

F.3d 631, 634 (7th Cir. 2005); *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958), and a court has the discretion to exclude evidence "that would have merely invited the jury to speculate" on the fact in question. *Barry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994).

If the letter were admitted it could result in a kind of mini-trial on the question of what the real intent of FMCC's offer was, for obviously, the plaintiff's position would be that the offer reflected not good faith, but a business decision by a corporate predator that had gotten caught. Once the subject had been opened up by the defense, Mr. Clevenger would be entitled to explore the circumstances surrounding the letter under the principle of completeness. *Cf. United States v. Collicott*, 92 F.3d 973, 981 (9th Cir. 1996). One of those circumstances – indeed perhaps the most critical from a relevancy perspective – would be that the letter was in response to Mr. Clevenger's May settlement demand, for the inferences to be drawn from a voluntary disclosure of wrongdoing by a defendant are vastly different from those to be drawn where the settlement offer only came in the wake of the plaintiff's claim that he had been defrauded. But that would result in disclosure of Mr. Clevenger's settlement demand, and he is not willing to allow Rule 408 to be violated, even if FMCC had the power to waive the Rule's prohibitions.

Apart from the potential of lawyers being called as witnesses to explore what really underlay the August 11 letter – one of the evils Rule 408 was designed to eliminate, *Pierce v. Tripler, supra* – whatever minimal probative value the August 11 letter might have would be substantially outweighed by confusion of the issues and considerations of undue delay and waste of time. The defendants will have ample opportunity to prove at trial that their intent in January of 2003 was not fraudulent, and exclusion of the letter will not impede that endeavor. It will simply remove from the jury's consideration evidence that would otherwise invite guesswork and conjecture on their part.

12

There is a final concern. The August 11 letter stated that it was being made "[i]n [sic] effort to fully resolve this matter fairly and in an amicable fashion. . . ." This portion of the letter is an assertion of FMCC's motivation and its opinion that its offer is fair. While the letter is theoretically not being offered for the truth of the matters asserted, there is the risk that the jury will use the letter for its impermissible hearsay assertions, regardless of cautionary instructions. *See* J. Cole, Hearsay, Juries, White Elephants and Hippopotamuses 30 LITIGATION 49 (Winter 2004). Whatever minimal value the remaining portions of the letter have are substantially outweighed by the danger of unfair prejudice and confusion of the issues. Rule 403, Federal Rules of Evidence. Since the defendants have offered the letter as a whole, it must be excluded regardless of how it might be considered had the inadmissible portions been deleted. *Lever Bros. Co. v. Atlas Assurance Co.*, 131 F.2d 770, 777 (7th Cir. 1942).

## CONCLUSION

For the foregoing reasons, the defendant's petition to present evidence [# 101] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/16/05

13